IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-60-1FL
No. 5:21-CV-297-FL

| | |
|---|---|
| BRUCE NICHOLAS PARRISH, ) <br>     Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br>     Respondent. ) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court for consideration of Petitioner's 28 U.S.C. § 2255 motion to vacate [DE #132]. The Government has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted [DE #138]. Petitioner has not responded in opposition to the Government after receiving an extension from the court to do so by September 12, 2022 [DE #148].[1] This matter has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the Rules Governing Section 2255 Proceedings. For the reasons explained below, the undersigned recommends that the Government's motion to dismiss be granted.

---

[1] An order was entered allowing Petitioner's counsel to withdraw from representation and instructing Petitioner to file a notice of self-representation or cause new counsel to file a notice of appearance. (Order dated Aug. 17, 2022 [DE #148] at 3.) Petitioner was warned that failure to do so may result in dismissal of his motion. Due to Petitioner's incarceration and the posture of the case, the undersigned does not recommend dismissal due to failure to comply with this aspect of the aforementioned order.

## BACKGROUND

On February 28, 2018, Petitioner was charged in counts one, two, four, five, six and seven of a seven-count indictment. (Indictment [DE #1].) Count One charged a conspiracy to distribute fifty grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 846; Count Two charged distribution and possession with the intent to distribute a quantity of methamphetamine in violation of 21 U.S.C. § 841(a)(1); Counts Four and Six charged possession of a listed chemical with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1); and Counts Five and Seven each charged possession of equipment, chemicals, products, and material with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). (*Id.*)

Petitioner pleaded guilty, pursuant to a written plea agreement, to Count One on October 17, 2018. (Arraignment Tr. [DE #113]; Plea Agt. [DE ##55, 103] at 1.) In exchange for his guilty plea to Count One, the Government agreed to dismiss the remaining counts against Petitioner. (Plea Agt. at 6.) The parties also stipulated to the following: a guidelines base offense level of 30 pursuant to U.S.S.G. § 2D1.1; an upward adjustment of three levels pursuant to U.S.S.G. § 2D1.1(b)(13)(C);[2] and a downward adjustment for acceptance of acceptance of responsibility pursuant to

---

[2] Petitioner entered his guilty plea shortly before the updated guidelines manual became effective on November 1, 2018. This guidelines provision now appears at (b)(14)(C) and was updated in the PSR. (*See* Final PSR at 19 ¶ 79; Revised PSR at 19 ¶ 80.)

U.S.S.G. § 3E1.1. (*Id.* at 7–8.) Petitioner also agreed to waive his appellate rights. (*Id.* at 1.)

The United States Probation Office prepared a draft Presentence Report (PSR) on December 27, 2018, to which Petitioner did not object. (Draft PSR [DE #66]; Final PSR [DE #82] at 23 (noting no objections from defense counsel).) In calculating Petitioner's offense level, the Probation Office also applied several specific offense characteristic increases and an adjustment for role in the offense to which the parties had not stipulated in the plea agreement. (Final PSR at 19 (applying specific offense characteristic increases pursuant to U.S.S.G. § 2D1.1(b)(1), (2), (12), (16)(B)(i), and role adjustment pursuant to U.S.S.G. § 3B1.1(b)).)

On June 20, 2019, Petitioner's attorney filed a motion to withdraw, citing a request from Petitioner to do so and a potential conflict of interest should her representation continue. (Mot. Withdraw [DE #84].) After a hearing, the court allowed counsel to withdraw and directed the Office of the Federal Public Defender to appoint substitute counsel. Attorney Mitchell Styers entered an appearance the following day and subsequently filed written objections to the final PSR. (Styers Notice of Appearance [DE #87]; Pet'r's PSR Objs. [DE #90].) Specifically, Attorney Styers objected to the specific offense characteristic increases and to the use of statements by Petitioner's co-defendant. (Pet'r's PSR Objs.) The Probation Office then issued a Revised PSR addressing Petitioner's objections, contending that changes to the PSR based on the objections were not warranted. (Revised PSR [DE #92] at 23–25; Cover Letter to Revised PSR [DE #92-1].) The Revised PSR ultimately calculated

Petitioner's guidelines range as 360 to 480 months' imprisonment based on criminal history category II and total offense level 41. (Revised PSR at 20.)

The court held Petitioner's sentencing hearing on December 18, 2019. (Sentencing Tr. [DE #120].) After hearing preliminary argument from counsel and testimony from Petitioner's co-defendant, the court recessed. (*Id.* at 41.) After reconvening, counsel informed the court that during the recess they had reached an agreement regarding Petitioner's guidelines objections. (*Id.* at 42.) The Government agreed that the specific offense characteristic increases for possession of a dangerous weapon and use/threat of violence pursuant to U.S.S.G. §§ 2D1.1(b)(1) & (2) did not apply and, in exchange, Petitioner's counsel would withdraw the remaining guidelines objections.[3] (*Id.*) This agreement resulted in a lower offense level in comparison to the PSR, with a new guidelines range of 235 to 293 months' imprisonment. (*Id.*) In conformity with the parties' agreement, the court sustained Petitioner's objections to application of U.S.S.G. §§ 2D1.1(b)(1) & (2) and adopted the concomitantly lower guidelines range. (*Id.* at 52; Statement of Reasons.) The court ultimately sentenced Petitioner to 169 months' imprisonment after downwardly departing from the guidelines range. (*Id.*)

---

[3] The remaining objections were to application of offense level increases pursuant to U.S.S.G. §§ 2D1.1(b)(12) (maintaining a premises for manufacturing or distributing a controlled substance), 2D1.1(b)(16) (knowingly distributing a controlled substance to a person under age 18), and 3B1.1(b) (manager or supervisor role).

4

Petitioner appealed to the Fourth Circuit, and Attorney Styers was appointed to represent Petitioner on appeal. (Notice of Appeal [DE #108]; Appointment Order [DE #111].) The Government moved to dismiss the appeal as being precluded by the appellate waiver in Petitioner's plea agreement, to which Petitioner responded in opposition. Pet'r's Opening Br., *United States v. Parrish*, No. 19-4960, ECF No. 14 (4th Cir. Apr. 30, 2020); Gov't Mot. Dismiss Appeal, *United States v. Parrish*, No. 19-4960, ECF No. 19 (4th Cir. May 20, 2020); Pet'r's Resp. Opp'n Mot. Dismiss Appeal, No. 19-4960, ECF No. 23 (4th Cir. May 27, 2020). On July 14, 2020, the Fourth Circuit granted the Government's motion and dismissed Petitioner's appeal, with the mandate issuing on August 5, 2020. Dismissal Order, *United States v. Parrish*, No. 19-4960, ECF No. 24 (4th Cir. July 14, 2020); Mandate, *United States v. Parrish*, No. 19-4960, ECF No. 27 (4th Cir. Aug. 5, 2020). Petitioner timely filed the instant motion to vacate pursuant to 28 U.S.C. § 2255 on July 16, 2021. (Mot. Vacate.)

## DISCUSSION

Under § 2255, there are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence exceeds the statutory maximum sentence, and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426–27 (1962).

Petitioner raises four IAC claims. (Mot. Vacate at 13–15.) Broadly, Petitioner raises IAC claims against (i) his initial attorney who represented Petitioner at

arraignment and negotiated the written plea agreement and (ii) his sentencing counsel for the representation leading up to and occurring at sentencing. For ease of analysis, the undersigned will address Petitioner's IAC claims as to each attorney and phase of his case.

To prevail on an IAC claim, Petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 678–88 (1984). The reasonableness of counsel's performance must be judged according to the specific facts of the case at the time of counsel's conduct. *Id.* at 690. Additionally, a petitioner must show he was prejudiced by his attorney's performance. *Id.* at 692. There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, and the petitioner bears the burden of demonstrating that counsel's assistance was neither reasonable nor the product of sound strategy. *Strickland*, 466 U.S. at 689. Tactical and strategic decisions by counsel, including which witnesses to call in court, are given "wide latitude" in the context of an IAC claim. *Id.*; *United States v. Dyess*, 730 F.3d 354, 364–65 (4th Cir. 2013) (decisions about which witnesses to call at trial are strategic) (citing *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998)); *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (noting that "which witnesses to call is a classic tactical decision left to counsel") (citing *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008)). Tactical and strategic decisions are "not unreasonable simply because the client

expressed a contrary view." *Chapman*, 593 F.3d at 369.[4] Unsupported, conclusory allegations are not sufficient to warrant relief under § 2255. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152, 165–66 (1996).

In the context of a guilty plea, a petitioner "must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). "Absent clear and convincing evidence to the contrary, [a petitioner] is bound by the representations he made during the plea colloquy." *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (internal quotation marks omitted); *see also United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (holding that "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false" and that the truth of sworn statements during a Rule 11 colloquy is "conclusively established" unless there are "extraordinary circumstances" (internal quotation marks omitted)); *Richardson v.*

---

[4] In contrast, a defendant's expressed wishes whether to plead guilty, waive a right to a jury trial, testify in his own defense, and whether to appeal must be followed by defense counsel. *Chapman*, 593 F.3d at 369 (citing *Florida v. Nixon*, 543 U.S. 175, 187 (2004)).

7

*United States*, Nos. 4:11-CR-110-FL & 4:13-CV-130-FL, 2015 WL 4366198, at *3 (E.D.N.C. July 16, 2015) (holding that a § 2255 petitioner's "sworn representations as to his guilt to the charged offense made at a plea hearing 'carry a strong presumption of verity' and 'constitute a formidable barrier against any subsequent collateral proceedings'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))). The court can correct any misinformation provided by counsel during a properly conducted Rule 11 hearing. *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) ("[E]ven if [the defendant's] trial counsel provided [the defendant] incorrect information about sentencing, [the defendant] was in no way prejudiced by such information given the trial court's careful explanation of the potential severity of the sentence.").

A.   IAC from Initial Appearance through Guilty Plea

Petitioner alleges that his initial attorney should have accommodated Petitioner's dyslexia by reading and reviewing all of the discovery material with Petitioner and her failure to do so resulted in Petitioner's inability to understand the Government's evidence against him. (Mot. Vacate at 14). Petitioner also states that he was not "properly advised about [his] sentencing exposure." (*Id.*) Petitioner alleges that had he understood the discovery material and his sentencing exposure, he would not have pleaded guilty.[5] (*Id.*)

---

[5] Petitioner also states that he would not have agreed to the drug weight stipulation in the plea agreement or the withdrawal of PSR objections at sentencing. The withdrawal of PSR objections will be addressed in the section analyzing Petitioner's IAC claims against his sentencing counsel.

Petitioner's sworn statements during his plea colloquy defeat this claim. Petitioner was placed under oath and swore that (1) aside from the plea agreement, no one made any promises that induced Petitioner to plead guilty; (2) he understood the charge to which he wished to plead guilty; (3) he was satisfied with his attorney's advice and counsel and had discussed his case with counsel; (4) he understood the court's explanation of his rights, including how he might be sentenced; (5) he was guilty of Count One; and (6) he understood the maximum possible punishment for each charge, after the Government read aloud the punishment. (Arr. Tr. [DE #113] at 11–19.) The court specifically addressed Petitioner's dyslexia, with Petitioner confirming that he can speak and understand English and can read with assistance, albeit "not very well." (*Id.* at 12–13.) The court reviewed the plea agreement, and Petitioner affirmatively stated that (i) he read and discussed the plea agreement with his attorney before signing; (ii) the plea agreement represented all agreements that he had made with the Government; and (iii) he understood "the terms, the language, the words, the sentences, [and] any legal phrases" in the plea agreement after discussing it with counsel. (*Id.* at 17–18.) Petitioner then reiterated his guilt and confirmed that he did not need any more time to think about his plea or to discuss his case with counsel. (*Id.* at 20–21.) The Government read aloud a factual basis, which Petitioner did not dispute. (*Id.* at 21–26.)

Any misinformation provided by Petitioner's counsel or misunderstanding regarding the charge and sentencing exposure by Petitioner was thus corrected during the plea colloquy. Petitioner has identified no extraordinary circumstance that

9

would call into question the truth of his statements made under oath. The court specifically addressed Petitioner's dyslexia, and Petitioner orally confirmed his understanding of the charges, the maximum penalties, sentencing procedure in federal court, and the plea agreement. Petitioner has not carried his burden to show that his attorney's representation fell below an objective standard of reasonableness and this IAC claim should therefore be dismissed. *See Beck*, 261 F.3d at 396; *Lemaster*, 403 F.3d at 221; *Foster*, 68 F.3d at 88.

### B. IAC from Guilty Plea through Sentencing

Petitioner alleges that Attorney Styers provided ineffective assistance in several ways after appointment: (i) not adequately reviewing the discovery material with Petitioner so that Petitioner could identify inconsistencies in his co-defendant's statements that were used against him in the PSR and at the sentencing hearing; (ii) not visiting Petitioner in person to prepare for sentencing but only speaking with Petitioner via telephone; (iii) misadvising Petitioner that a probationary sentence was a possibility so as to pacify Petitioner's dissatisfaction with counsel and dissuade Petitioner from firing counsel; (iv) entering into the PSR objections agreement with the Government during the sentencing hearing recess which resulted in the withdrawal of Petitioner's PSR objections to application of U.S.S.G. §§ 2D1.1(b)(12), (b)(16), & 3B1.1(b); (v) not further cross-examining Petitioner's co-defendant at the sentencing hearing and failing to call two additional persons present in the courtroom as witnesses for the purpose of impeaching Petitioner's co-defendant and supporting Petitioner's PSR objections; and (vi) misadvising Petitioner that he could not fire

counsel at sentencing and request a continuance and would lose his offense level reduction for acceptance of responsibility if he tried to do so. (Mot. Vacate at 13–15.) Petitioner alleges that Attorney Styers' representation leading up to and including the sentencing hearing resulted in Petitioner "getting a worse sentence than [he] would have received had [he] had the effective assistance of counsel." (*Id.* at 15.)

The foregoing IAC claims are contravened by the record and caselaw for the following reasons. First, the record indicates that Attorney Styers was prepared for sentencing and had prepared Petitioner for sentencing. At the opening of the sentencing hearing, Attorney Styers clarified to the court that, because of Petitioner's dyslexia, he and Petitioner had read "most everything word for word" in the PSR. (Sentencing Tr. at 3.) Petitioner also stated to the court that he had enough time to speak with Attorney Styers to prepare for sentencing. (*Id.*) Moreover, Attorney Styers' written objections to the PSR—which Petitioner does not complain about—indicate knowledge of the discovery material and potential challenges to the guidelines calculation in the PSR. Based on the record, Petitioner's claim that Attorney Styers was ill-prepared and did not adequately prepare Petitioner is not plausible.

Second, Attorney Styers' decisions as to which witnesses to call and how to examine them and to withdraw certain guidelines objections in exchange for the Government conceding the merit of other guidelines objections are paradigmatic tactical decisions which are presumed reasonable. *Strickland*, 466 U.S. at 689; *Dyess*, 730 F.3d at 364–65; *Chapman*, 593 F.3d at 369. That reasonableness is only bolstered when, as here, counsel's decision resulted in a significant reduction in the guidelines

11

range from which the court downwardly departed. These IAC claims rely on speculation that the court (i) would have found the testimony of Petitioner's co-defendant to be incredible while at the same time fully crediting testimony from two other persons and (ii) ultimately would have sustained all of Petitioner's PSR objections. Petitioner's claims in this regard are unsupported conclusory allegations which do not warrant relief. *See Nickerson v. Lee*, 971 F.2d at 1136.

Third, Petitioner fails to plausibly allege that counsel reviewing the PSR with Petitioner over the telephone and generally preparing Petitioner for sentencing via telephone was either professionally unreasonable or prejudicial. Given Petitioner's dyslexia, verbal communication with counsel would appear to be most important. Moreover, Petitioner alleges no basis to believe that in-person preparation with counsel would have produced a different outcome, thus not satisfying the prejudice prong of the IAC inquiry. Accordingly, this IAC claim should be dismissed.

Lastly, Petitioner's claim that counsel misadvised him about a probationary sentence and how the court would perceive a mid-sentencing request from Petitioner to change counsel are belied by the record. As the plea colloquy reveals, Petitioner was aware of the statutory penalties he faced by entering into the plea agreement, including that the charge carried a mandatory five-year term of imprisonment. *See Beck*, 261 F.3d at 396; *Lemaster*, 403 F.3d at 221; *Foster*, 68 F.3d at 88. Petitioner's contrary statements in the instant motion to vacate are simply buyer's remorse and do not warrant relief. *Fugit*, 703 F.3d at 260.

Ultimately, Petitioner's claims against sentencing counsel are contravened by the record and involve tactical decisions that are presumptively reasonable. Based on the record, the sentence imposed, and Petitioner's allegations, Petitioner has failed to overcome that presumption and to otherwise carry his burden to state a plausible IAC claim.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the Government's motion to dismiss [DE #138] be GRANTED and Petitioner's motion to vacate [DE #132] be DISMISSED for failure to state a claim upon which relief can be granted.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the parties. Each party shall have until **November 21, 2022**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (Dec. 2019).

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to

review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 3rd day of November 2022.

_____
KIMBERLY A. SWANK
United States Magistrate Judge